**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLSTATE INDEMNITY COMPANY,

       PLAINTIFF,

Case No. 22-12363

v.

CHARLES AND DELORIS MARCY, THE
ESTATE OF DOROTHY SMITH MARCY,
DENZEL SMITH, INDIVIDUALLY AND
AS A PERSONAL REPRESENTATIVE OF
THE ESTATE OF DOROTHY MARIE
SMITH-MARCY, AND D.M.

Sean F. Cox
United States District Court Judge

       DEFENDANTS.
_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is an insurance liability case. Plaintiff Allstate Indemnity Company ("Allstate") filed this action against Charles Marcy, Deloris Marcy, the Estate of Dorothy Smith-Marcy, Denzel Smith, Individually and as Personal Representative of the Estate of Dorothy Marie Smith-Marcy ("the Estate"), and D.M. pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 alleging it has no duty to defend or indemnify Defendants. The Court granted default judgements against Defendants Deloris Marcy (ECF No. 28) on March 23, 2023, and Charles Marcy (ECF No. 56) on September 15, 2023. Therefore, only Defendants the Estate, and Denzel Smith, Individually and as Personal Representative of the Estate of Dorothy Marie Smith-Marcy and D.M, remain.

On May 18, 2023, Allstate filed its present Motion for Summary Judgment. (ECF No. 38). On September 6, 2023, Defendants filed their own cross motion for summary judgment (ECF No.

1

54). Allstate's Motion for Summary Judgment has been fully briefed (ECF Nos. 38, 62, and 64) but Defendants failed to file a reply to Allstate's Response to Defendant's Motion for Summary Judgment. The Court held a hearing to address both motions on **Thursday December 21, 2023, at 1:30 p.m**.

For the reasons explained below the Court shall **DENY** Allstate's Motion for Summary Judgment and **DENY** Defendants' Motion for Summary Judgment.

## BACKGROUND

This case originated in Wayne County Circuit Court as a Complaint for Wrongful Death filed February 22, 2021. (ECF No. 1-3). In October 2017, Defendants Charles and Deloris Marcy ("the Marcys") took out a Renewal Landlords Package Policy ("the policy") with Allstate for a property they owned on Hartwell Street in Detroit, MI. (ECF No. 1-2). By 2018, Smith-Marcy resided at the property. (ECF No. 1-3, PageID.72). On the evening of July 17, 2018, a fire broke out at the Hartwell property resulting in Smith-Marcy's death. (ECF No. 1-3).

The Estate of Smith-Marcy sued the Marcys and Allstate claiming the Marcys' negligence caused Dorothy Smith-Marcy's death, entitling them to recover damages.[1] (ECF No. 1-3). The policy included a duty to defend or indemnify the policy holders if a lawsuit were to arise. (ECF No. 1-2; PageID.60-64). Based on the policy, Allstate is currently defending the Marcys in the Wayne County litigation under a reservation of rights. (ECF No. 1-5). That case is now pending in Wayne County Circuit Court.

Allstate filed this case in federal court on October 4, 2022, claiming it does not have a duty to defend or indemnify the Marcys in the Wayne County case under the policy terms. (ECF No. 1). Allstate made the following claims in its Complaint:

---

[1] Allstate was dismissed from that case because it was improperly named as a defendant in that case.

2

> (1) Allstate does not have a duty to defend or indemnify Charles Marcy or Deloris Marcy under the subject landlords package policy, because any bodily injury, personal injury or property damage sustained by Dorothy Smith-Marcy, the estate, Denzel Smith and/or d.m. did not arise from an occurrence. (Count I).
> (2) Allstate does not have a duty to defend or indemnify Charles Marcy or Deloris Marcy under the subject landlords package policy because any bodily injury, personal injury or property damage sustained by Dorothy Smith-Marcy, the estate, Denzel Smith and/or d.m. is barred by the policy's expected or intended acts exclusions. (Count II).
> (3) Allstate does not have a duty to defend or indemnify Charles Marcy or Deloris Marcy under the subject landlords package policy, because any property damage sustained to the Hartwell Street property is barred by the policy's exclusion for insured owned property. (Count III).
> (4) Allstate does not have a duty to defend or indemnify Charles Marcy or Deloris Marcy under the subject landlords package policy, because there is no coverage under the policy for bodily injuries sustained by tenants. (Count IV).
> (5) Other Insurance (Count V).
> (6) No Duty to Indemnify, and No Duty to Defend (Count VI).

(ECF No. 1, PageID.6–14). For these claims, Allstate requested the following relief:

> WHEREFORE, the Allstate, Allstate Indemnity Company, respectfully requests this Honorable Court enter an order that:
>
> a. Declares the rights and other relations of the parties to this action;
> b. Declares that, under [the policy], Allstate is not obligated to continue defending, or to indemnify [the Marcys] in the underlying lawsuit…because any bodily injury sustained…did not arise from an occurrence; (Count I)
> c. Declares that, under [the policy], Allstate is not obligated to continue defending, or to indemnify [the Marcys] in the underlying lawsuit…because any bodily injury, personal injury, or property damage suffered…is barred by the policy's expected or intended acts exclusions; (Count II)
> d. Declares that, under [the policy], Allstate is not obligated to continue defending, or to indemnify [the Marcys] in the underlying lawsuit…as any property damage suffered to the Hartwell property is barred by the policy's property owned by an insured person exclusion; (Count III)
> e. Declares that, under [the policy], Allstate is not obligated to continue defending, or to indemnify [the Marcys] in the

3

       underlying lawsuit…because any bodily injury suffered…are excluded by the policy's bodily injury to tenants exclusion; (Count IV)

    f. Declares that, under [the policy], Allstate's liability, if any, is limited to its pro rata portion of those injuries based on the total amount of insurance which covers the claimed injuries; (Count V)

    g. Declares that, under [the policy], Allstate is not obligated to continue defending, or to indemnify [the Marcys] in the underlying lawsuit (Count VI)

    h. Permits a trial by jury of any fact issues in this case;

    i. Awards Allstate its costs and attorney fees;

    j. Awards Allstate any other relief this Court deems appropriate.

(ECF No. 1, PageID.7–14).

The Court granted default judgements against Defendants Deloris Marcy (ECF No. 28) on March 23, 2023, and Charles Marcy (ECF No. 56) on September 15, 2023. Therefore, only Defendants the Estate, and Denzel Smith, Individually and as Personal Representative of the Estate of Dorothy Marie Smith-Marcy ("the Estate"), and D.M, remain.

The parties engaged in several months of discovery, with discovery closing on October 30, 2023. (ECF No. 56). The motion now before the Court is the parties' cross-motions for summary judgment. (ECF No. 38; ECF No. 54).

**STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S.

4

317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

The standards upon which courts evaluate motions for summary judgment do not change when "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id*. (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)).

## ANALYSIS

### I.     General Duty to Defend/Indemnify

Under Michigan law, an insurer's duty to defend is broader than its duty to indemnify. *See Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480 (1994). The duty to defend arises from the language of the insurance contract itself. *Michigan Ed. Empoyees Mut. Ins. Co. v.* Turow, 242 Mich. App. 112, 117; 617 N.W. 64 (2003). An insurance company has a duty to defend its insured "if the allegations of the underlying suit arguably fall within the coverage policy…" *Royce v. Citizens Ins Co.*, 219 Mich. App. 537, 543; N.W.2d 144 (1996). However, insurers do not have a duty to defend policy holders if the insurance plan unambiguously rules out coverage. *Hamilton Specialty Ins. Co. v. Transition Inv., L.L.C.*, 818 Fed. Appx. 429, 430 (6th Cir., 2020). (ECF No. 38, PageID.274).

## II. Allstate's Motion for Summary Judgment

Allstate argues it has no duty to defend or indemnify the Marcys for several reasons, as explained below.[2]

### a. Whether Injury Arose from an "Occurrence" (Count I)

First, Allstate argues it has no duty to defend or indemnify the Marcys under the policy because any bodily injury, personal injury or property damage sustained by Defendants did not arise from an occurrence. (ECF No. 38, PageID.275). Allstate argues that for the Marcys to be entitled to a defense and/or indemnification, the acts complained of must arise from an "occurrence." (ECF No. 38, PageID.276) (emphasis added). Under the policy, an "occurrence" is defined as:

> "an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury, personal injury or property damage** and arising from the ownership, maintenance or use of the residence premises."

and

> "an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** and arising from the ownership, maintenance or use of the residence premises."

(ECF No. 38, PageID.277). In other words, according to Allstate, the "occurrence" must be "an accident" as stated in the policy. The term "accident" is not defined in the policy, but is defined by Michigan courts in the context of liability insurance as:

> "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected."

---

[2] Allstate's overarching request for an order stating it has no duty to defend or indemnify the Marcys is also count VI of its Complaint.

*Hawkeye-Sec. Ins. Co.*, 185 Mich. App. at 374. Further, Allstate argues that "the definition of accident should be framed from the standpoint of the insured, not the injured party, and that the appropriate focus of the term 'accident' must be on both 'the injury-causing act or event and its relation to resulting property damage or personal injury.'" *Nabozny v. Burkhardt*, 461 Mich. 471, 477; 606 N.W.2d 639 (2000). In that same case, the court held that:

> **when an insured's <u>intentional</u> actions create a direct risk of harm**, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injur[e].

*Id.* at 478 (emphasis added).

Based upon these definitions of "accident" and "occurrence" Allstate argues the Marcys' conduct was not the result of an accident, and therefore, does not constitute an occurrence under the policy. (ECF No. 38, PageID.277). Allstate argues that the act complained of—the fire—was not an accident because the Marcys *intentionally* failed to equip their property with smoke detectors, alarms, fire extinguishers and other equipment which would have alerted any occupants of the property that there was a fire in the house. (ECF No. 38, PageID.279-80; ECF No. 1-3, ¶¶15-19, PageID.72). Further, the Marcys failed to contact the City to have an inspection and receive a certificate of occupancy that could have ensured whether the property was safe to lease. (ECF No. 38, PageID.280; ECF No. 1-3, ¶¶15-19, PageID.72). Allstate alleges there is no evidence that the Marcys acted accidentally or mistakenly forgot to equip the home with smoke detectors. (*Id.*) Allstate admits, however, that there is also no evidence that the Marcys intended to harm the occupants. (*Id.*) Allstate provides no case law to support the contention that a fire at a property without smoke detectors does not constitute an "accident".

Nonetheless, Allstate contends that the Marcys' actions were intentional because the Marcys knew that smoke detectors and other fire alerting equipment was needed, failed to do so,

7

and created a direct risk of harm to the occupants of the property. (*Id.*) Accordingly, Allstate argues the Marcy's conduct was not the result of an accident, and therefore, their conduct did not constitute an occurrence. (*Id.*) As such, Allstate claims it has no duty to defend or indemnify the Marcys against the Estate and Denzel Smith. (*Id.*)

Defendants disagree. Defendants argue there is no evidence to support the fire was not an "occurrence" that arose from an "accident". (ECF No. 62, PageID.537).

First, Defendants argue that Allstate failed to address an amendment which states that the "…Losses We Do Not Cover Under Coverage X" section, does **not** include:

(a) **bodily injury** which results from the sudden and accidental…household appliance located at the residence premises.
(b) **bodily injury** caused by **heat, smoke** or **fumes from a hostile fire**. A hostile fire is a fire which becomes uncontrollable or breaks out from where it was intended to be.

(ECF No. 62, PageID.635-37). Defendants also argue that according to the official fire report, the cause of the fire has not been determined. (ECF No. 62, PageID.537). The Detroit Fire Department listed the cause of fire as "undetermined" in their report. (*Id.*) The fire report also notes:

| | |
|---|---|
| Hazardous Materials Released | None |
| H2 Detector | Unknown |
| Ignition (area of ignition) | *Undetermined* |
| Ignition area (heat source) | *Undetermined* |
| Factors Contributing to Ignition | *Undetermined / None* |
| Human Factors Contributing to Ignition | None |
| Presence of Detectors | Undetermined |

(ECF No. 62, PageID.537). Defendants argue that under the *Hawkeye* definition of "accident", the fire department has essentially stated that the cause of the fire was accidental. (ECF No. 62, PageID.538). As such, Defendants argue that the fire does in fact fall within the definitions of "accident" and subsequently "occurrence" under the Policy and Michigan law. (*Id.*) Here, the Court finds Defendants' interpretation more persuasive.

8

Here, the act complained of is a fire. (ECF No.1-3. PageID.71). The cause of the fire is unknown. (ECF No. 62, PageID.537). The Marcys' failure to install smoke detectors, etc., is not an act, but rather a failure to act. There is therefore no evidence that the *act complained of*—the fire—arose from any *action* taken by the Marcys. A fire of unknown origin with no evidence of causation would be considered an unanticipated, "unforeseen and unexpected by the person injured…without the insured's foresight or expectation and without design or intentional causation on [their] part." *Hawkeye-Sec. Ins. Co.*, 185 Mich. App. at 374. The act complained of would therefore constitute an "accident" under Michigan law. And in this case, this act complained of—the fire—took place during the policy period, and resulted in "bodily injury, personal injury or property damage and arising from the ownership, maintenance or use of the residence premises." The act complained of would therefore also meet the definition of an "occurrence" under the policy. (ECF No. 38, PageID.277).

Absent any caselaw that supports Allstate's interpretation of the terms "accident" and "occurrence", the Court finds the acts complained of in the underlying complaint *did* arise from an "occurrence". As such, Allstate has failed to show that there remains no genuine issue of material fact, and the Court finds summary judgement on this claim to be improper.

### b. Whether the Injury is Barred by Policy's Expected or Intended Acts Exclusions (Count II)

Next, Allstate argues it has no duty to defend or indemnify the Marcys under the Policy because any bodily injury, personal injury or property damage sustained by Dorothy Smith-Marcy, the Estate, Denzel Smith, and/or D.M. is barred by the policy's expected or intended acts exclusions. (ECF No. 38, PageID.280). The "losses we do not cover" section of the policy states:

> We do not cover any **bodily injury, personal injury, or property damage** intended by, or which may reasonably be expected to result from the international or criminal acts or omissions of, an insured person. This exclusion applies even if:

9

  a)  such insured person lacks the mental capacity to govern his or her conduct;
  b)  such bodily injury, personal injury, or property damage is of a different kind or degree than intended or reasonably expected; or
  c)  such bodily injury, personal injury, or property damage is sustained by a different person than intended or reasonably expected.
This exclusion applies regardless of whether an insured person is actually charged with, or convicted of, a crime.

\* \* \*

We do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:
  a)  an insured person lacks the mental capacity to govern his or her conduct;
  b)  such bodily injury is of a different kind or degree than intended or reasonably expected; or
  c)  such bodily injury is sustained by a different person than intended or reasonably expected.

(Landlords Package Policy, Exhibit "A" to Complaint for Declaratory Relief, ECF No. 1-2, pgs. 22 and 24, PageID.61 and 63).

Allstate argues similar "expected or intended acts" exclusions have routinely been found to be unambiguous and enforceable in Michigan. Specifically, "…the word 'expected' broadens the scope of the exclusion because 'expected' injuries are the natural, foreseeable, expected, and anticipated result of an *intentional act*.'" *Auto Owners Ins. Co. v. Harrington*, 455 Mich. 377, 383; 565 N.W.2d 839 (1997) (emphasis added). Further, "this 'intended or expected' language bars coverage for injuries caused by an insurer who acted intentionally despite his awareness that harm was likely to follow from is conduct…In other words, coverage is precluded if the insured's claim that he did not intend or expect the injury 'flies in the face of all reason, common sense and experience.'" *Id.* at 383.

In other words, Allstate again claims the Marcys failure to install smoke detectors, other fire detecting equipment, or to have the City inspect the property to obtain a certificate of occupancy, constitutes intentional conduct. (ECF No. 38, PageID.281). It claims these intentional acts were a natural, foreseeable, and anticipate result which led directly to the claimed injuries.

(ECF No. 38, PageID.282). In fact, the underlying Complaint states "that it was foreseeable the safety and well-being of the occupants would be at risk in the event the fire of the kind that occurred." (*Id.*)

Allstate claims that the policy's expected or intended acts exclusion clearly precludes coverage because the Marcys' actions were not accidental and/or because the death of an occupant of the property was a natural, foreseeable, expected, and anticipated result of the Marcys' actions. Therefore, Allstate argues it has no duty to defend or indemnify the Marcys in this action because it is explicitly precluded under the policy.

Defendants disagree. Defendants argue that the Marcys failure to maintain "smoke detectors does not, without more, establish that the Marcys "expected[3] or intended" their actions to result in the fire and subsequent death of the occupants of the property. (ECF No. 62, PageID.539). While Allstate argues that there is no coverage due to the Marcys' "intentional or criminal acts" Defendants' underlying Complaint alleges *negligence* by the Marcys. Further, Allstate again ignores the amendment to the "Coverage X" portion of the policy which states that the exclusions cited above do not apply to:

(a) Bodily injury which results from the sudden and accidental…at the residence premises
(b) Bodily injury caused by heat, smoke or fumes from a hostile fire. A hostile fire is a fire which becomes uncontrollable or breaks out from where it was intended to be.

(ECF No.62, PageID.540).[4]

---

[3] They argue that the test for "expected" damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage. *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 748 [Cal.Rptr2d 815]. But this definition is not followed in Michigan or the 6th Circuit.
[4] The Court notes that this leaves Coverage Y intact, which still states that the policy does not "cover any bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person." (Landlords Package Policy, Exhibit "A" to Complaint for Declaratory Relief, ECF No. 1-2, pgs. 22 and 24, PageID.61 and 63).

Here, the Court is not persuaded by Allstate's arguments. As stated above, the Marcys' failure to install smoke detectors, other fire detecting equipment, or to have the City inspect the property, is not an intentional act as Allstate claims. Rather, it is a *failure* to act, or an omission. The parties make no argument as to how the court should interpret an omission under the policy. While an omission is referenced in the applicable policy language, the language itself is ambiguous as to whether it refers to an "intentional omission" a "criminal omission" or simply an "omission". As stated above, the policy states that it:

> "[does] not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person."

(Landlords Package Policy, Exhibit "A" to Complaint for Declaratory Relief, ECF No. 1-2, pgs. 22 and 24, PageID.61 and 63). Even if the parties had deemed the Marcys' failures to install smoke detecting equipment, etc., "omissions," or made any arguments for how to interpret the term "omission" in the policy language (they do not), an ambiguity in the policy would remain, and such ambiguity must be resolved in favor of the party that did not write the policy. *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 517 F. Supp. 3d 725, 729 (E.D. Mich. 2021) (citing *Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111, 595 N.W.2d 832 (1999) (stating that under Michigan law, ambiguities in an insurance contract are construed in favor of the insured).

The Court therefore finds it to be unclear whether the policy's Expected or Intended Acts Exclusions bars recovery for such injuries, meaning a genuine issue of material fact remains and that summary judgment in Allstate's favor is improper.

### c. Loss of Consortium Claim

Next, Allstate argues it has no duty to defend or indemnify the Marcys under the Policy against the loss of consortium claims because the Estate and Mr. Smith have not sustained (or

12

alleged to have sustained) a bodily injury, personal injury, or property damage as defined under the policy.

Under Michigan law, a wrongful death action is controlled by statute. See MCL 600.2921 and MCL 600.2922. Claims under this section must be brought by the personal representative of the estate of the deceased. MCL 600.2922(2). Under MCL 600.2922, the only person or persons who may recover under this section are:

> a) The deceased's spouse, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of death of the deceased.
> b) The children of the deceased's spouse.
> c) Those persons who are devisees under the will of the deceased, except those whose relationship with the decedent violated Michigan law, including beneficiaries of a trust under the will, those persons who are designated in the will as persons who may be entitled to damages under this section, and the beneficiaries of a living trust of the deceased if there is a devise to that trust in the will of the deceased.

MCL 600.2922(3). These persons must suffer damages and survive the deceased. *Id.*

Further, a loss of consortium claim is not merely an item of damages. *Wesche v. Mecosta Cnty. Rd. Comm'n*, 480 Mich. 75, 85, 746 N.W.2d 847, 854 (2008) (citing *Eide v. Kelsey–Hayes Co.*, 431 Mich. 26, 29, 427 N.W.2d 488 (1988)). Rather, a loss of consortium claim is derivative of an underlying bodily injury which is nonetheless regarded as a separate cause of action and not merely an item of damages. *Id.*

Allstate argues the Estate and Mr. Smith did not properly allege that they suffered a "bodily injury" as defined in the policy in their Underlying Complaint.[5] (ECF No. 1-3). Under the policy, bodily injury is defined as:

---

[5] Allstate cites two cases in support of its argument that Defendants did not properly allege a "bodily injury." *Greenman v. Michigan Mut. Ins. Co.*, 173 Mich. App. 88; 433 N.W.2d 346 (1988); *State Farm Fire & Cas. Co. v. Stone*, 2017 WL 2017538, at *5 (E.D. Mich., July 17, 2017). Even if Defendants had not properly alleged a bodily

13

> "Physical harm to the body, including sickness, disability or disease, and resulting death…"
>
> * * *
>
> "physical harm to the body, including sickeness or disease…or any resulting symptom, effect, condition, disease or illness…"

(ECF No. 1-2, PageID.41). However, the underlying Complaint states that "the loss of life of the decedent" resulted in "additional pain, suffering and mental anguish" to the surviving heirs. (ECF No. 1-3, PageID.74). In other words, Defendants state in their underlying Complaint that the injury complained of is the death of the decedent, which is clearly included in the definition of "bodily injury" under the policy. (ECF No. 1-2, PageID.41). In other words, Defendants properly alleged a bodily injury—death—under the policy.

The Court therefore finds summary judgment on this claim to be improper as well.

### d. Whether Smith-Marcy is a "Tenant" (Count IV)

Next, Allstate argues it has no duty to defend or indemnify the Marcys under the Policy because the policy does not include coverage for injuries sustained by tenants.

Under Michigan law, a "tenant" is defined as "a person who is currently a party to a rental agreement with the lessor." MCL 554.636(7). However, the policy defines a "tenant" as "any person who rents, leases, or lawfully occupies a rental unit" (ECF No. 1-2, PageID.42).

The parties disagree as to whether Smith-Marcy was considered a "tenant". Allstate argues that under the policy definition, Smith-Marcy was tenant and that any injuries she sustained are therefore not covered under the policy. (ECF No. 1-2, PageID.42). Allstate also argues that because Defendants alleged the property was a "rental dwelling" in their underlying complaint, and that Smith-Marcy was a resident of that "rental dwelling" that Defendants have essentially admitted Smith-Marcy was a tenant of the property. (ECF No. 1-3, PageID.71). Defendants argue the

---

injury as defined in the policy (they have), these cases would not be applicable to the case at bar because neither involves an estate bringing a claim for loss of consortium, as is the case here.

definition of "tenant" under Michigan law requires evidence of a "rental agreement" and that there is no evidence of any rental agreement in this case. MCL 554.636(7). (ECF No. 63, PageID.564). Neither party cites any case law to support their assertions.

Michigan law defines a "tenant" as "a person who is currently a party to a rental agreement with the lessor." MCL 554.636(7). Neither party has provided any evidence of any such rental agreement, written or oral. As such, the Court finds an issue of material fact remains as to whether Smith-Marcy was a "tenant," making summary judgment on this claim improper.

  e. **Negligence Claims**

Next, Allstate argues it has no duty to defend or indemnify the Marcys under the Policy because Defendants, despite titling Count I of their underlying complaint as "negligence" have in actuality only alleged intentional conduct by the Marcys. (ECF No. 38, PageID.286). Allstate again attempts to argue that the Marcys' failure to install working smoke detectors, other fire detecting equipment, and to have the property inspected, constitutes an action by the Marcys, making a negligence claim implausible in this case. Allstate also reiterates that the Marcys' conduct does not constitute an occurrence under the policy. (*Id.*)

In response, Defendants argue that the allegations of negligent conduct require that Allstate defend the Marcys in the underlying action. (ECF No. 62, PageID.565). In support of this argument, Defendants make several irrelevant arguments, including that they have filed an amended Complaint in the underlying case that adds additional parties. (*Id.*)

First, as the Court found above, the act complained of in this case—a fire—does constitute an occurrence under the policy. Second, as the Court also stated above, the failure to install working smoke detectors, etc., does not constitute an act by the Marcys—it is a failure to act, or an omission. And Defendants' underlying Complaint describes what the Marcys did as such. (ECF

No. 1-3, PageID.72-73). Third, Allstate makes no claim as to whether an issue of material fact remains regarding this negligence claim. Instead, Allstate appears to argue Defendants failed to state a claim for negligence in their underlying complaint—which is not the standard at the summary judgment phase. Absent any claim of no genuine issue of material fact regarding Defendants' negligence claim, the Court finds summary judgment on this claim improper.

### III. Defendants' Motion for Summary Judgment

In its motion for summary judgment, Defendants make two claims as to why the Court should find Allstate has a duty to defend or indemnify the Marcys, and why summary judgment should be granted in their favor.

First, Defendants argue the underlying policy is not the only policy that governs these proceedings. (ECF No. 54, PageID.439). Second, Defendants argue Allstate is liable to indemnify and defend the Marcys because Allstate issued an insurance policy on the same day that the land contract was amended.

#### a. The Land Contract and Addendum

First, the Court addresses Defendants' argument that the policy is not the only policy that governs these proceedings. (ECF No. 54, PageID.439). Defendants argue that the "land contract and addendum" "provide clear and convincing evidence that [the policy] is not the only contract that is relevant and material to the issues in this case." (ECF No. 54, PageID.443).

Allstate argues that the policy is the only applicable contract in this case. (ECF No. 61, PageID.509). Further, Allstate argues that Defendants fail to explain how the "land contract and addendum" are relevant to these proceedings or how it could affect the outcome of the case. (ECF No. 61, PageID.509). This Court agrees.

Absent any explanation as to why or how these contracts are relevant to the case at bar, the Court finds summary judgment on this claim improper.

### b. Allstate Issued the Policy the Same Day the Land Contract Was Amended

Second, Defendants argue Allstate is liable to indemnify and defend the Marcys because Allstate issued the policy on the same day that the land contract was amended. (ECF No. 54, PageID.443). Allstate argues that it is again unclear what Defendants' are requesting. (ECF No. 61, PageID.510). If, as Allstate believes, Defendants are arguing that the policy should be rescinded and/or voided because of the Land Contract, it is unclear if or how Allstate would owe any coverage at all to the Marcys since the policy would no longer be in effect. (ECF No. 61, PageID.510).

Here, Defendants again make no claim as to the relevance of these contracts or how they would affect the outcome of this motion. Therefore, the Court again finds summary judgment improper regarding this claim.

### CONCLUSION

Both parties have failed to provide any evidence to show that no genuine issue of material fact remains in this case. Therefore, for the reasons stated above, the Court **DENIES** Allstate's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

> s/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated:  December 28, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on

December 28, 2023, by electronic and/or ordinary mail.

s/Jennifer McCoy  
Case Manager